IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PAMELA KATHRYN CONLEY,

    Defendant.

Case No. 21-CR-064-JFH

**OPINION AND ORDER**

Before the Court is a motion for bond pending appeal [Dkt. No. 139] and sealed supplement to motion for bond pending appeal [Dkt. No. 142] (collectively, the "Motion") filed by Defendant Pamela Kathryn Conley ("Defendant"). The United States of America ("Government") opposes the Motion. Dkt. No. 143 (sealed). Defendant filed a reply. Dkt. No. 144. For the reasons stated, the Motion is DENIED.

**BACKGROUND**

This case began in February 2021, when Defendant was charged with nineteen (19) counts of bank fraud and aggravated identity theft. Dkt. No. 2. She was arrested and ordered detained following a detention hearing before a United States Magistrate Judge. Dkt. No. 11; Dkt. No. 15. Two superseding indictments followed, and Defendant was ultimately charged with twenty-eight (28) counts of fraudulent activity: twenty-four (24) counts of bank fraud and four (4) counts of aggravated identity theft. Dkt. No. 44. In August 2021, Defendant moved to reopen the issue of detention. Dkt. No. 47. The Court referred the motion to a magistrate judge, who conducted a hearing and denied Defendant's motion. Dkt. No. 49; Dkt. No. 58. On the morning her trial began in September 2021, and after a jury was selected, Defendant pled guilty to all twenty-eight (28) counts. Dkt. No. 75; Dkt. No. 77.

A year and two months passed between Defendant's guilty plea and sentencing date.[1] Defendant's Motion states the "record is unclear regarding the reasons" for what Defendant characterizes as a "lengthy delay." Dkt. No. 139 at 2. Because Defendant's current counsel is from out of state and perhaps unaware of the state of federal courts in Northeastern Oklahoma over the past three years, the Court takes a brief interlude to make sure the record is clear on this issue.

The Northern and Eastern Districts of Oklahoma have experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). As Chief Justice Roberts recognized in his *McGirt* dissent, "the share of serious crimes committed by 10%–15% of the 1.8 million people in eastern Oklahoma, or of the 400,000 people in Tulsa, is no small number." 140 S.Ct. at 2501. The dramatic increase in criminal caseloads because of *McGirt* has resulted in strained judicial resources across numerous areas. Additionally, the Northern District of Oklahoma is allocated three and a half full-time district judges but due to unfortunate and unforeseeable circumstances, has been operating with only one and a half active district judges in the tsunami of *McGirt*. The undersigned is the half-time judge due to his multi-district caseload—a caseload which includes the Eastern District of Oklahoma, which has had a proportionally even larger onslaught of criminal cases since July 2020.

The practical effect of *McGirt* was an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-

---

[1] During this time, Defendant unsuccessfully attempted to withdraw her plea. Dkt. No. 84; Dkt. No. 86.

prioritizes-courthouse-projects. This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*. *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). Numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases).

Data from the United States Sentencing Commission reflect that the Northern District of Oklahoma conducted 439 sentencings in fiscal year 2022, more than twice as many sentencings as it conducted in fiscal year 2019 before the *McGirt* decision. This is doubly significant because of the gravity of each and every sentencing decision that must be made. Every defendant is a unique human being with many factors to be researched by the United States Probation Office and considered by the Court before sentencing, including: personal and family history; physical condition; mental and emotional health; potential substance abuse history; educational, vocational, and special skills; employment history; and financial condition as well as specific offense conduct, sentencing guideline calculations, and sentencing options. Considering the detail required in a presentence investigation report, the gravity of a sentencing decision, and the effect of imposition of a sentence on a defendant's life, liberty, and freedom, the sentencing process should not be carelessly rushed.

On the whole, because of the onslaught resulting from *McGirt* in the Northern and Eastern Districts, the current average time between a change of plea and sentencing in this District is longer than anyone—litigants, attorneys, or the Court—would prefer. It is amid this tsunami of criminal cases that Defendant pled guilty.

Defendant was sentenced in November 2022 to fifty-four (54) months of imprisonment: thirty (30) months as to the bank fraud counts run concurrently with each other, followed by twenty-four (24) months as to the aggravated identity theft counts run consecutively to the bank fraud counts but concurrently with each other. Dkt. No. 104. This sentence was at the low end of Defendant's advisory guideline, which included a range of thirty (30) to thirty-seven (37) months as to the bank fraud counts. Moreover, in addition to the requirement that the aggravated identity theft counts be run consecutively to the bank fraud counts, each identity theft count *could* have also been run consecutively for a total of ninety-six (96) additional months. In other words, a sentence of one hundred thirty-three (133) months would have still been within Defendant's advisory guideline range. Instead, Defendant received the lowest possible sentence within the guideline range, in part because of her health issues. Dkt. No. 114 at 38.

Approximately a month before she was sentenced in this case, Defendant was indicted in the Eastern District of Oklahoma for forty-two (42) counts of aiding and assisting in the preparation of false income tax returns. Case No. 22-CR-139-JFH, Dkt. No. 2 (E.D. Okla. Oct. 13, 2022). Defendant appeared for her arraignment in the Eastern District pursuant to a writ of habeas corpus ad prosequendum [*id.* at Dkt. No. 7] and waived her detention hearing [*id.* at Dkt. No. 12]. Defendant's Eastern District case remains pending, with trial set for October 2, 2023.[2] *Id.* at Dkt. No. 43. Through the random distribution of case assignments, Defendant's Eastern District case is also before the undersigned.

---

[2] Arguably, then, Defendant's request to be released on conditions is moot—even if released on conditions in the Northern District, she would have a detainer for the Eastern District.

4

## AUTHORITY AND ANALYSIS

Defendant's Motion invokes 18 U.S.C. § 3143(b), which governs release or detention pending appeal. Section 3143 sets out that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal, shall be detained unless the Court makes two findings. 18 U.S.C. § 3143(b)(1). First, the Court must find by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released. *Id.* at (b)(1)(A). Second, the Court must find that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *Id.* at (b)(1)(B).[3]

The Court begins with flight risk and danger to the community. Because the Court concludes that Defendant has failed to carry her burden to demonstrate she is not a flight risk or danger, the Court does not reach the question of whether her appeal raises a substantial question of law or fact likely to result in reversal.

### I. Pretrial Detention

The question of whether a defendant is a flight risk or a danger to the community is relevant in both pre- and post-adjudication detention issues; however, the burden varies between the two stages. Since Defendant litigated detention issues twice before her guilty plea and sentencing, the Court briefly summarizes the differences and relevant history.

---

[3] The Government agrees that Defendant's appeal is not for the purpose of delay. Dkt. No. 143 at 5.

Before an adjudication of guilt, it is the Government's burden to demonstrate by a preponderance of the evidence that a defendant is a flight risk or by clear and convincing evidence that a defendant's release would be dangerous to any other person or to the community. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003); 18 U.S.C. § 3142(f). The pretrial detention statute provides four factors for courts to consider, including the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Here, Defendant had two pretrial detention hearings: one upon her arraignment on the original indictment [Dkt. No. 12] and one related to her motion to reopen bond [Dkt. No. 47]. United States Magistrate Judge Christine D. Little ruled during the first hearing that the Government had demonstrated both flight risk and danger to the community under their respective standards [Dkt. No. 16] and during the second hearing that Defendant had not met the standard to reopen detention [Dkt. No. 63 at 41].

Particularly relevant to the Court's current determination are Judge Little's remarks regarding Defendant's history of fraudulent behavior, including while charges were pending:

> The defendant is alleged to have provided multiple false instruments, including alleged forged medical excuses, providing tax returns that contained false information and which were not actually filed with the IRS, in an effort to obtain money based on those documents, and provided information that was inaccurate in court proceedings. Very persuasive to the Court's determination that detention is [required] to ensure the safety of the community is information that, while the defendant was on bond on a state charge of insurance fraud in 2019, the defendant is alleged to have made additional misrepresentations by falsification of records, and she continued to pursue loans from financial institutions with [inaccurate] information . . . . The nature and seriousness of the danger posed is financial. However, the defendant's continuing conduct as alleged indicates that she poses a continuing danger as

6

there is information that she continued to seek loans of several thousand dollars even while insurance fraud charges were pending.

Dkt. No. 16 at 3.

## II. Detention Pending Appeal

After an adjudication of guilt, detention is generally mandatory. 18 U.S.C. § 3143 (discussing release or detention both pending sentencing and pending appeal). On a post-sentencing detention question, the burden falls to a defendant—not the Government—to show by clear and convincing evidence that she is neither a flight risk nor a danger to the community. *Id.* at (b)(1)(A). A court may consider the pretrial detention factors when assessing post-sentencing detention but is not required to apply them. *United States v. Wills*, No. 19-40013-03-DDC, 2020 WL 1873622, at *2 (D. Kan. Apr. 15, 2020) ("Although the court is not required to consider the factors set out in 18 U.S.C. § 3142(g) in [a § 3143 case], some courts have found those pretrial detention factors helpful to the analysis." (citations omitted)); *United States v. Riego*, No. 1:21-CR-596-WJ-1, 2022 WL 15437892, at *1 (D.N.M. Oct. 27, 2022) (same).

### A. Flight Risk

Defendant asserts her medical condition makes it highly unlikely she would flee. Dkt. No. 139 at 4. The Court is well aware of Defendant's medical situation. However, Defendant's health problems are longstanding and did not deter, prevent, or slow her from committing her crimes.[4]

---

[4] For instance, the Motion says Defendant "continues to suffer from multiple serious health conditions, including ovarian cancer, coronary artery disease, kidney disease, and other conditions that limit her mobility and require regular medical care" [Dkt. No. 139 at 4] and mentions white matter abnormalities on her brain, nodules on her lungs, and severe weight loss [Dkt. No. 142 at 2]. The second superseding indictment to which Defendant pled guilty fixed the dates of her charged fraudulent activity as September 2016 through August 2021. Dkt. No. 44. According to Defendant's presentence report, her ovarian cancer diagnosis was in 2017 and her heart problems occurred during and before 2019. The white matter abnormalities in her brain date back to at least 2020. Dkt. No. 142 at 17. The overlapping nature of Defendant's ailments and crimes is strong

Moreover, Defendant has a history of exacerbating her own symptoms. According to her presentence investigation report, Defendant embarked on hunger strikes while detained between her guilty plea and sentencing. And at least one of Defendant's pro se filings includes documentation that she refused to accept medical treatment while detained. Dkt. No. 84 at 8 (sealed).

Defendant's lack of ties to the community gives the Court further concern. At the pretrial phase, the Magistrate Judge described Defendant as "float[ing] from her residence to stay at other places including in Joplin, Missouri" and noted that she does not have significant close relationships with family in this District—both factors which raise concern about her likelihood of fleeing. The Motion does not mention any plan for where Defendant would reside were she released on conditions. *See generally* Dkt. No. 139; Dkt. No. 142. Defendant's past itinerant nature and lack of evidence regarding future residential options does not help her case.

Given the entirety of this history, Defendant has not met her burden to show by clear and convincing evidence that she is not a flight risk.

### B. Community Danger

Defendant downplays her risk of community danger, describing her "offense of conviction [as] a purely financial one" and characterizing economic harm as a mere theoretical threat. Dkt. No. 139 at 4-5. The Court disagrees.

When considering danger to the community, the Tenth Circuit has instructed that "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal

---

evidence that Defendant's medical condition has not rendered her as fragile or decrepit as she wants the Court to believe her to be.

activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). Numerous courts in the Tenth Circuit—including but not limited to the Magistrate Judge in the pretrial proceedings of this case and at least two other judges in this District—have held that risk of financial malfeasance or fraud poses danger to a community. *See, e.g.,* Dkt. No. 16 at 3 (Little, J.); *United States v. Parks*, Case No. 18-CR-251-GKF, Dkt. No. 257, at 10-11 (N.D. Okla. Nov. 21, 2022) (Frizzell, J.) ("*Parks I*"); *United States v. Parks*, Case No. 18-CR-251-GKF, 2023 WL 2598694 (N.D. Okla. Mar. 22, 2023) (Jayne, J.) ("*Parks II*"); *United States v. Valencia*, Case No. 23-CR-28-TS, 2023 WL 3572467 (D. Utah May 19, 2023); *United States v. Shareef*, 907 F. Supp. 1481, 1486 (D. Kan. 1995).

Judge Frizzell in this District explained that financial allegations were "serious and significant" where a defendant had "demonstrated his ability to open and close businesses quickly, transfer assets . . . and operate in different [professional] sectors" and concluded that "no conditions would be effective at preventing potential additional fraud sufficiently enough to protect the community." *Parks I*, 18-CR-251-GKF, Dkt. No. 257, at 10-11. Magistrate Judge Jayne in this District recapped two rulings, one from herself and one from Judge Frizzell, that a defendant alleged to have committed a fraud-based felony posed a financial danger to the community and was unlikely to abide by conditions aimed at deterring fraud and financial dangers to the community. *Parks II*, 2023 WL 2598694 at *5. The District of Utah recently affirmed a magistrate judge's pretrial detention order where a defendant was charged with seven counts of bank fraud and had a history of committing financial and identity theft crimes in part because the alleged crimes "threaten[ed] the financial safety of the community." *Valencia*, 2023 WL 3572467 at *3-4. The District of Kansas concluded that evidence a defendant continued to engage in fraudulent activity notwithstanding being on bond for other charges demonstrated a significant danger to the

community. *Shareef*, 907 F. Supp. at 1498. And in an unpublished decision, the Tenth Circuit affirmed detention where the defendant was charged with and subsequently pled to wire fraud, mail fraud, and bank fraud. *United States v. Frye*, 202 F. App'x 308, 309-10 (10th Cir. 2006).[5]

The financial and economic danger to the community is significant here. Even apart from the aggravated identity theft charges Defendant challenges later in the Motion, Defendant has been found guilty on twenty-four (24) bank fraud charges in this case and faces another forty-two (42) fraud-related charges in her Eastern District case. Adding the four (4) identity theft convictions, which are currently intact pending Defendant's appeal, she has **seventy (70)** current and convicted federal charges. Nine (9) victims are listed in Defendant's judgment, with Defendant ordered to pay restitution of over $450,000.[6] Dkt. No. 104 at 6. This restitution amount represents less than half of Defendant's scheme, as the Court noted during sentencing that Defendant defrauded or attempted to defraud multiple financial institutions in the amount of over $1,000,000 across several years. Dkt. No. 114 at 38.

Defendant has not by any stretch of the imagination demonstrated that releasing her would not pose danger to the community.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion for bond pending appeal [Dkt. No. 139] is DENIED.

Dated this 2nd day of August 2023.

JOHN E. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[5] Unpublished appellate decisions are not binding precedent but may be cited for persuasive value. Fed. R. App. P. 32.1.

[6] Specifically, $451,064.64. Dkt. No. 104 at 6.